TRUST CO. OF NORTH AMERICA v. MANHATTAN TRUST CO. et al.

(Circuit Court of Appeals, Eighth Circuit. November 5, 1896.)

No. 749.

LANDLORD AND TENANT—STATUTORY LIEN—LEASED RAILROAD PROPERTY.

The use, from time to time, by a railroad company, of its rolling stock, in a leased station at one of the points on its line, is not within the meaning of the statute of Iowa (McClain's Ann. Code, § 3192), giving to a landlord a lien for rent upon "all crops grown upon the demised premises and upon any other personal property of the tenant which has been used on the premises during the term," and the lessor of such station does not acquire a lien on the rolling stock by virtue of such statute. 68 Fed. 72, affirmed.

Appeal from the Circuit Court of the United States for the Northern District of Iowa.

In the year 1889 the Sioux City & Northern Railroad Company built a line of road from Sioux City, Iowa, to Garretson, S. D., a distance of about 100 miles, and on the 1st day of January, 1890, executed a trust deed to the Manhattan Trust Company, complainant in this cause, to secure an issue of first mortgage bonds, which was acknowledged by the grantor on the 22d day of January, 1890, and by the grantee on the 27th day of January, 1890, and was recorded on the 31st day of January, 1890. The railroad terminal facilities at Sioux City were owned by a separate corporation, organized in 1889, known as the Sioux City Terminal Railroad & Warehouse Company, and this corporation issued its first mortgage bonds as of the same date with the railroad bonds, January 1, 1890, and to secure the same executed its trust deed to the Trust Company of North America, the intervener in this case, on the 1st day of January, 1890, and the same was recorded on the 18th day of January, 1890. The arrangement between the railroad company and the terminal company for the use of the terminals was

perfected, and consists of a lease for 100 years, which was executed on the 14th day of December, 1889, and acknowledged on the 21st day of January, 1890, and possession taken thereunder shortly before the 1st of January, 1890. The lease and mortgage were executed at the same time, and with reference to each other. Under this lease the railroad company agreed to pay the terminal company $90,000 a year rent. The lease provided that out of the $90,000 the sum of $75,000 should be payable direct to the Trust Company of North America, to pay the interest on the bonds issued by the terminal company. The mortgage from the terminal company to the Trust Company of North America provided that this $75,000 rental should be applied in the payment of the interest on the bonds and that the Trust Company of North America should have all the powers and rights for the enforcement of the lease to the extent of the amount of the rental it was entitled to receive, which the terminal company had for the enforcement of the payment of the rent; and provided further that upon default in the payment of rent or in the payment of interest the Trust Company of North America should have all the power which the terminal company had for the enforcement of the provisions of the lease, and should be entitled to all the rents, incomes, and profits of the property. Under the provisions of the lease the rent was payable quarterly, and was paid regularly until September, 1893, when default was made; and, as the railroad company was also in default, the Manhattan Trust Company, as trustee in the mortgage to secure the railroad bonds, on the 28th day of September, 1893, filed its bill of complaint asking for the appointment of a receiver for the railroad, but not asking for a foreclosure. Afterwards it filed an amended complaint asking for the foreclosure of its mortgage on the railroad, and thereupon the Trust Company of North America filed an amendment to its petition of intervention previously filed, asking for the first time that its mortgage be declared a prior lien upon a portion of the rolling stock of the railroad company, on the ground that under the statute of Iowa the terminal company had acquired a landlord's lien thereon for rentals under the lease, which lien, it was claimed, was prior in point of time and right to the railroad mortgage. On December 23, 1893, the board of directors of the terminal company, by resolution duly adopted, exercised the right of re-entry reserved in the lease by reason of the default in the payment of rent continued for a period of more than 30 days, and elected to declare and did declare the lease and all rights thereunder forfeited, and made immediate demand upon the Sioux City & Northern Railroad Company and its receivers for the surrender of the demised premises to the lessor. To the amended petition of intervention the Manhattan Trust Company, complainant, made its answer, denying that a landlord's lien attached to the rolling stock of the lessee under the statute, and setting up the nonpayment of the rent under the lease, and the action of the terminal company, through its board of directors, declaring the lease forfeited; and pleaded the statute of limitations of Iowa, which provides that all actions for the establishment of a landlord's lien shall be brought within six months after the expiration of the lease; and averred that the lease had expired more than six months before the filing of the amended petition of intervention. The circuit court held that the terminal company, as the original lessor, had the legal right to forfeit the lease for the nonpayment of rent without consulting the Trust Company of North America, mortgagee; and that, having elected to forfeit the lease, the statute of limitations immediately commenced to run, and, as more than six months had elapsed before the filing of the amended petition of intervention, the cause of action was barred. The question whether rolling stock used upon the line of a railroad can be said to be so used within the limits of a terminal depot as to fasten and continue a landlord's lien thereon under the landlord's lien law of Iowa was not decided. Manhattan Trust Co. v. Sioux City & Northern R. Co., 68 Fed. 72. From the decree dismissing the petition of intervention the Trust Company of North America appealed to this court. In this court the appellant expressly waives any claim to a lien on the rolling stock which was acquired by the railroad company after the complainant's mortgage took effect.

Asa F. Call, for appellant.

Geo. W. Wickersham (Messrs. Strong and Cadwalader, on brief), for appellees.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The statute relied on by the appellant as giving it a landlord's lien on the rolling stock of the railroad reads as follows:

"A landlord shall have a lien for his rent upon all crops grown upon the demised premises, and upon any other personal property of the tenant which has been used on the premises during the term, and not exempt from execution, for the period of one year after a year's rent or the rent of a shorter period claimed falls due; but such lien shall not in any case continue more than six months after the expiration of the term." McClain's Code, Iowa, § 3192.

We think this statute is not applicable to this case. The language, "crops grown upon the demised premises and   *   *   *   any other personal property of the tenant which has been used on the premises," was never intended to apply to the fleeting use made of a terminal or other railroad station by a railroad train employed in interstate traffic. If the legislature had intended to fix a lien on the rolling stock of a long line of railroad running in and out of a leased station, language more appropriate to that purpose would have been used. The rolling stock of the railroad company upon which a lien is claimed under the statute was used for traffic purposes over the whole line of its road, extending into two states, and on connecting lines to the extent that such use is usual and customary among railroads. The rolling stock was not a fixture on the leased premises, and was not "used on the premises" at all, further than to be run in and out of the leased station at Sioux City while being used for traffic purposes over its own and connecting lines. This clearly is not such a use as the statute contemplates as essential to fasten a landlord's lien on the property of the tenant. If the contention of the appellant is sound, and a railroad company should lease half a dozen stations on the line of its road, each lessor would have a landlord's lien on all the rolling stock of the company passing in and out of the leased station, and there would be as many conflicting liens as there were leased stations, with all the litigation, including restraining orders and injunctions, which commonly attends the adjustment of conflicting liens on personal property. Such a condition of things would invite the obstruction of interstate commerce and the carrying of the United States mail, and would otherwise interfere with the public convenience. The purpose for which a railroad is created requires its rolling stock to be kept constantly moving from station to station and from state to state, going and coming in the discharge of the railroad company's duty as a common carrier. This is a very different use of the demised premises from that contemplated by the statute. This view is very much strengthened by the provisions of section 1967 of McClain's Code of Iowa. That section relates to mortgages on railroads and declares that "the rolling stock and personal property of the company properly belonging to the road and pertaining thereto shall be deemed a part of the road." This statute would seem to contemplate that the rolling stock shall be attached to the road; not to a part of the road, or to any one station on the road, but to the whole line of road, for the purpose for which the road itself was built.

We have examined the decisions of the supreme court of Iowa to which counsel on either side have referred us. It is not claimed that any of them are in point, and none of them comes near enough to the question in this case to aid us in its solution, and we therefore make no reference to them. The conclusion reached on this point in the case makes it unnecessary to decide whether the lessor had a right, under the circumstances, to declare the lease forfeited. The decree of the circuit court is affirmed.